John W. Houghtaling, II, LA State Bar No. 25099 (*pending admission pro hac vice*)
john@gmhatlaw.com
Kevin R. Sloan, LA State Bar No. 34093 (*pending admission pro hac vice*)
kevin@gmhatlaw.com
Jennifer Perez, LA State Bar No. 38370 (*pending admission pro hac vice*)
jennifer@gmhatlaw.com
**GAUTHIER MURPHY & HOUGHTALING LLC**
3500 North Hullen Street
Metairie, Louisiana 70002
Telephone: (504) 456-8600
Facsimile: (504) 456-8624

Larry C. Russ, State Bar No. 082760
lruss@raklaw.com
Nathan D. Meyer, State Bar No. 239850
nmeyer@raklaw.com
Justin E. Maio, State Bar No. 304428
jmaio@raklaw.com
**RUSS, AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: 310-826-7474
Facsimile: 310-826-6991

Attorneys for Plaintiffs, Simon Wiesenthal Center, Inc. and Moriah Films

**UNITED STATES DISTRICT COURT**

**CENTRAL DESTRICT OF CALIFORNIA**

| | |
|---|---|
| SIMON WIESENTHAL CENTER, INC. and MORIAH FILMS, <br><br> Plaintiffs, <br><br> vs. <br><br> CHUBB GROUP OF INSURANCE COMPANIES/FEDERAL INSURANCE COMPANY and DOES 1-20, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiffs Simon Wiesenthal Center, Inc. and Moriah Films (collectively, "Plaintiffs"), bring this Complaint, alleging against Defendant Chubb Group of Insurance Companies/Federal Insurance Company ("Defendant"), as follows:

## PARTIES

1. At all relevant times, Simon Wiesenthal Center, Inc. is a domestic, non-profit corporation incorporated under the laws of the State of California with its principal place of business in the County of Los Angeles, with an address of 1399 S Roxbury Drive, Los Angeles, California 90035, and which is authorized to do business and is doing business in the State of California, County of Los Angeles.

2. Moriah Films is the Jack and Pearl Resnick Film Division of the Simon Wiesenthal Center and a named insured on the insurance policy that is the basis of this suit.

3. At all relevant times, Defendant is upon information and belief, a foreign corporation incorporated under the laws of the State of Indiana, having a principal place of business in Whitehouse Station, New Jersey, and it may be cited to appear and answer herein by serving its registered agent for service of process; namely Vivian Imperial, 818 West Seventh Street, Suite 930, Los Angeles, California 90017.

4. Defendant is doing business in the County of Los Angeles, State of California, subscribing to Policy Number 3519-19-79 ILL issued to the Plaintiffs for the period of August 1, 2019, to August 1, 2020. Defendant is transacting in the business of insurance in the state of California and the basis of this suit arises out of such conduct.

## JURISDICTION AND VENUE

5. This action is filed pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, et seq. and 28 U.S.C. §1332(a)(1), as there is complete diversity of citizenship between Plaintiffs and Defendant.

6. The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000). The amount in controversy in a

declaratory judgement action is determined by the object of the litigation. The object of this declaratory judgment will determine whether Plaintiff's business income and other covered policy losses, which total well over $75,000, are covered under Defendant's policy.

7. This Court has subject matter jurisdiction because an actual case or controversy exists between the parties, as evidenced by the facts and circumstances described herein. Plaintiffs are, therefore, entitled to bring this action in this Court.

8. Venue is proper in this Judicial District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's declaratory judgment claims occurred in this Judicial District, and/or a substantial part of property that is the subject of the action is situated here.

## FACTUAL BACKGROUND

9. On or about August 1, 2019, Defendant entered into a contract of insurance with the Plaintiffs, whereby Plaintiffs agreed to make payments to Defendant in exchange for Defendant's promise to indemnify the Plaintiffs for losses, including but not limited to, business income losses at several properties (hereinafter "Insured Properties").

10. The Insured Properties include entities that comprise the Simon Wiesenthal Center, including the Beit Hashoah Museum of Tolerance, Friends of Simon Wiesenthal Center for Holocaust Studies, SWC Museum Corporation, and Moriah Films.

11. The Simon Wiesenthal Center ("Center") is a global human rights organization researching the Holocaust and hate in both a historic and contemporary context. The Center confronts anti-Semitism, hate and terrorism, promotes human rights and dignity, stands with Israel, defends the safety of Jews worldwide, and teaches the lessons of the Holocaust for future generations. With a constituency of over 400,000 households in the United States, it is accredited as an NGO with international organizations, including the United Nations, UNESCO, Organization of

American States (OAS), the Latin American Parliament (PARLATINO), and the Council of Europe.

12. The Center also has an acclaimed educational arm, The Museum of Tolerance, which is the only museum of its kind in the world. The Museum is home to the nation's largest diversity training programs, with over 160,000 criminal justice professionals from 48 states and 75,000 California educators having trained with the Museums' Tools for Tolerance program. The Museum has welcomed over 7 million visitors, including numerous American Presidents, Israeli Prime Ministers, Kings, and European and religious leaders, as well as 130,000 middle and high school students every year.

13. Moriah Films, the two-time Academy Award winning film division of the Simon Wiesenthal Center, was created to produce theatrical documentaries to educate both national and international audiences, with a focus on contemporary human rights, ethical issues, and the Jewish experience. It is also the repository of the film and video archives of the Simon Wiesenthal Center, totaling millions of feet of film and tens of thousands of hours of historic materials.

14. Moriah Films has produced 16 documentaries of the epic events that have shaped modern Jewish history with narrators that include Elizabeth Taylor, Orson Welles, Sir Ben Kingsley, Michael Douglas, Dustin Hoffman, Nicole Kidman, Morgan Freeman, Sir Patrick Stewart, Kevin Costner, Christopher Waltz, Sandra Bullock, and George Clooney. The newest feature, *Never Stop Dreaming: The Life and Legacy of Shimon Peres*, which was acquired by Netflix and will premier globally later this year, features interviews with Presidents Obama, Bush, and Clinton, Former British Prime Minister Tony Blair, and Barbara Streisand.

15. The Insured Properties are covered under a policy issued by Defendant with policy number 3519-19-79 ILL (hereinafter, "Policy").

16. The Policy is currently in full effect, providing property, business personal property, business income and extra expense, and additional coverages

between the period of August 1, 2019, to August 1, 2020.

17. Plaintiffs faithfully paid policy premiums to Defendant, specifically to provide additional coverages under a Business Income with Extra Expense form in the event of business closures by order of civil authority.

18. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the scheduled premises is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property within one mile of Plaintiffs' scheduled premises. This additional coverage is identified as coverage under "Civil Authority."

19. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the Policy means direct physical loss or damage unless the loss is specifically excluded or limited in the policy.

20. Based on information and belief, Defendant accepted the policy premiums with no intention of providing any coverage under the Business Income with Extra Expense part of the Policy or the Civil Authority extension due to a loss and shutdown from a global pandemic.

21. While some rogue media outlets have called the 2019-2020 coronavirus (referred to as "coronavirus" or "COVID-19") an exaggerated mass hysteria that will unlikely create significant physical damage, the scientific community, and those personally affected by the virus, recognize the coronavirus as a global pandemic causing real physical loss and damage.

22. The global pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight days according to scientific research.

23. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

24. The coronavirus creates a physical impact and loss on property as it alters surfaces, limiting or prohibiting the intended use of property and causing a dangerous property condition.

25. On March 19, 2020, Mayor Eric Garcetti issued the Safer at Home Emergency Order (the "Order") ceasing operations in Los Angeles County that require in-person attendance by workers at a workplace and prohibiting all public and private gatherings of any number of people occurring outside a residence except as allowed in the Order. Plaintiffs' non-profit operations were not exempted in any way. This Order effectively shuttered all income producing arms of the Simon Wiesenthal Center in Los Angeles.

26. As a result of the civil authority shutdown, Plaintiffs' 2020 National Tribute Dinner honoring George and Amal Clooney, 2020 Address by Secretary of State Mike Pompeo at the Museum of Tolerance, all New York fundraising events, and Museum of Tolerance Programs have been cancelled.

27. As a result of the civil authority shutdown, Plaintiffs' screening and U.S. premiers of *Never Stop Dreaming: The Life and Legacy of Shimon Peres*, Mobile Museum of Tolerance Bus Launch, Spirit of Courage Fundraiser, Woman of Valor Luncheon, and Spirit of Hope Fundraiser have been postponed.

28. As a further direct and proximate result of the Order, Plaintiffs' have been forced to close their businesses and furlough and/or lay off multiple employees due to a prohibition of access to the Insured Properties.

29. The virus is physically impacting public and private property, and physical spaces in cities around the world and the United States. Any effort by Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger policyholders and the public.

30. The Order was given in part, because COVID-19 is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged

periods of time. Cities across the country, including San Francisco and Napa in California, have also provided that the closures are in part due to the virus' propensity to attach to surfaces, which is a dangerous property condition that causes property loss or damage.

31. On an April 22, 2020 shareholders call, Evan Greenberg, CEO of Defendant, indicated that the insurance industry would fight business interruption claims "tooth and nail," by contesting that the virus caused direct physical loss to property and that the pandemic "will be an earnings event for Chubb."

32. For the purposes of determining physical loss or damage of property, California and neighboring courts have found that coverage is triggered when there is an alteration to the property, even if invisible to the naked eye or not structural, that prevents the ordinary intended use of the property. *See Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-cv-01932-CL, 2016 WL 3267247, at *5-6 (D. Or. June 7, 2016). *See also MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 76 (2010).

33. For example, bacterial contamination via E-Coli to a water well located on a restaurant's property has been held to constitute physical loss or damage to property. *See e.g. Cooper v. Travelers Indem. Co. of Illinois*, 2002 WL 32775680 (N.D. Cal. 2002).

34. The word 'physical' has been defined by California courts as 'having material existence' or 'perceptible through the sense and subject to the laws of nature.' *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.,* 114 Cal.App.4th 548 (2003).

35. The coronavirus, like a bacterium, clearly has a material existence and is something that exists in nature that physically damages tangible property by rendering it unusable as it adheres to surfaces creating a dangerous property condition.

36. Insurance policies are not one size fits all. Some policies have clear

exclusions for viral 'pandemics,' while others do not exclude pandemics and only include exclusionary language for 'virus.' On the other end, some policies do not contain any exclusion for virus or pandemic and even extend coverage for losses caused by a virus and/or pandemic.

37. The Policy does not contain any virus or pandemic exclusion.

38. Under information and belief, Defendant denies that the policy extends coverage for losses under the civil authority provisions due to its exclusion under a "pollutant" exclusion.

39. The Policy defines a pollutant as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fibers, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed." The definition does not include the word virus.

40. In order for an exclusionary clause to effectively exclude coverage, it must be conspicuous, plain, and clear. *See e.g. MacKinnon v. Truck Ins. Exchange,* 73 P.3d 1205, 1213 (2003). This rule applies with particular force when the coverage portion of an insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded. *Id*.

41. The insurer bears the burden of establishing the claim comes within an exclusion. *Id*. To prevail, the insurer must establish its interpretation of the policy is the only reasonable one. *Id*. at 1218. Even if the insurer's interpretation is reasonable, the court must interpret the policy in the insured's favor if any other reasonable interpretation would permit coverage for the claim. *Id*.

42. Defendant did not specifically exclude losses from a virus, let alone a global viral pandemic and no reasonable insured in the non-profit human rights industry, let alone any other industry, would reasonably expect that any exclusions, let alone a 'pollutants' exclusion, in Defendant's Policy would preclude coverage for same.

43. In reading the definition of pollutant, neither virus nor pandemic would

be naturally included in such a grouping and the purpose of the exclusion clearly relates to industrial causes.

44. Any ambiguous terms within the Policy are nonetheless resolved in favor of the insureds, consistent with the insureds' reasonable expectations. *Safeco Ins. Co. v. Robert S.*, 28 P.3d 889 (2001).

45. The insurance industry is well aware of and utilizes both "virus" and "pandemic" exclusions. For example, the Liberty Mutual Fire Insurance Company policy in question in *Meyer Natural Foods, LLC v. Liberty Mutual Fire Insurance Company*, provided an exclusion for "the actual or suspected presence or threat of any virus, organism or like substance that is capable of inducing disease, illness, physical distress or death, whether infectious or otherwise, ***including but not limited to any epidemic, pandemic, influenza, plague, SARS, or Avian Flu***." (emphasis added) (*See* 218 F. Supp. 3d 1034 (D. Neb. 2016)).

46. At the time Defendant produced the Policy, Defendant knew that they could have clearly and unambiguously included exclusions for pandemics or virus, although Plaintiffs contest that even a generic 'virus' exclusion (as opposed to pandemic) would have clearly and unambiguously excluded coverage for physical loss or damage due to a global pandemic.

47. On information and belief, Defendant chose not to include a specific exclusion for pandemic or virus, it was not an accident or the result of negligent drafting, because they knew a policyholder would not equate a virus or pandemic to a pollutant. Defendant would then be able to expand the exclusionary provision beyond the reasonable non-profit human rights insureds' expectations in the event of extreme losses such as a global pandemic, all while collecting premiums.

48. Plaintiffs, as insureds in the non-profit, human rights industry, did not reasonably expect that any exclusion in their Policy would prevent coverage from physical loss or damage caused by a global pandemic that results in suspension of their entire businesses and threatens their very existence.

49.  A declaratory judgment determining that coverage is provided under the Policy will prevent the Plaintiffs from being left without vital coverage acquired to ensure the survival of their organizations due to the shutdown caused by the civil authorities' response and from the physical loss or damage caused by the coronavirus. As a result of the Order, Plaintiffs have incurred, and will continue to incur, even upon an eventual re-opening, a substantial loss of business income and additional expenses covered under the Policy.

## FIRST CAUSE OF ACTION
## DECLARATORY RELIEF
### (Against All Defendants)

50.  Plaintiffs re-allege and incorporate by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

51.  Under Federal Declaratory Judgment Act, 28 U.S.C. §2201, et seq., the court may declare rights, status, and other legal relations whether or not further relief is or could be claimed.

52.  An actual controversy has arisen between Plaintiffs and Defendant as to the rights, duties, responsibilities and obligations of the parties in that Plaintiffs contend and, on information and belief, that Defendant disputes and denies, that: (1) the Order by Mayor Eric Garcetti, in his official capacity, constitutes a prohibition of access to Plaintiffs' Insured Premises under the Policy's civil authority coverage; (2) the Order triggers coverage because the Policy does not include an exclusion for a virus or global pandemic; (3) the Policy provides coverage to Plaintiffs for any current and future civil authority closures of Insured Premises due to physical loss or damage from the coronavirus under the Civil Authority coverage parameters; and (4) the Policy provides business income coverage in the event that coronavirus has caused a loss or damage at the Insured Premises or immediate area of the Insured Premises. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is

needed to resolve the dispute and controversy.

53. Plaintiffs seek a Declaratory Judgment to determine whether the Order constitutes a prohibition of access to Plaintiffs' Insured Premises by a Civil Authority as defined in the Policy.

54. Plaintiffs further seek a Declaratory Judgment to affirm that the Order triggers coverage because the policy does not include an exclusion for a virus or global pandemic.

55. Plaintiffs further seek a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiffs for any current and future civil authority closures of Plaintiffs' Insured Premises due to physical loss or damage from the coronavirus and the Policy provides business income coverage in the event that coronavirus has caused a loss or damage at the Insured Premises.

56. Plaintiffs do not seek any determination of whether the coronavirus is physically in the Insured Premises, amount of damages, or any other remedy other than declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs herein, Simon Wiesenthal Center and Moriah Films, prays as follows:

1. For a declaration that the Order by Mayor Eric Garcetti constitutes a prohibition of access to Plaintiffs' Insured Premises;
2. For a declaration that the prohibition of access by a Civil Authority is specifically prohibited access as defined in the Policy;
3. For a declaration that the Order triggers coverage because the Policy does not include an exclusion for a virus or global pandemic;
4. For a declaration that the Policy provides coverage to Plaintiffs for any current and future civil authority closures of its Insured Premises due to physical loss or damage from the coronavirus under the Civil Authority coverage parameters and the Policy provides business income coverage

in the event that coronavirus has caused a loss or damage at the Insured Premises or immediate area of the Insured Premises.

5. For such other relief as the Court may deem proper.

DATED: April 29, 2020

RUSS, AUGUST & KABAT
Larry C. Russ
Nathan D. Meyer
Justin E. Maio


By: */s/ Nathan D. Meyer*
Nathan D. Meyer
Attorneys for Plaintiffs
*The Simon Wiesenthal Center, Inc. and Moriah Films*