1   DANIEL M. PETROCELLI (Bar No. 97802)
    dpetrocelli@omm.com
2   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 8th Floor
3   Los Angeles, California 90067
    Telephone:  (310) 553-6700
4   Facsimile:   (310) 246-6779

5   RICHARD B. GOETZ (Bar No. 115666)
    rgoetz@omm.com
6   ZOHEB P. NOORANI (Bar No. 253871)
    znoorani@omm.com
7   O'MELVENY & MYERS LLP
    400 South Hope Street, 18th Floor
8   Los Angeles, California 90071
    Telephone:  (213) 430-6000
9   Facsimile:   (213) 430-6407

10  Attorneys for Defendant FEDERAL
    INSURANCE COMPANY
11

12                  **UNITED STATES DISTRICT COURT**

13                 **CENTRAL DISTRICT OF CALIFORNIA**

14

15  SIMON WIESENTHAL CENTER,          Case No. 2:20-cv-03890-ODW-JEM
    INC. and MORIAH FILMS,
16                                    **MEMORANDUM OF POINTS**
                  Plaintiffs,         **AND AUTHORITIES IN**
17                                    **SUPPORT OF DEFENDANT'S**
         v.                           **MOTION TO DISMISS**
18                                    **PURSUANT TO FEDERAL**
    CHUBB GROUP OF INSURANCE          **RULES OF CIVIL PROCEDURE**
19  COMPANIES/FEDERAL                 **12(b)(6) AND 12(b)(1)**
    INSURANCE COMPANY,
20                                    **Accompanying Documents:**
                  Defendant.         Notice of Motion and Motion;
21                                    Declaration of Scott Shearer; Request
                                      for Judicial Notice; Proposed Order
22
                                      Date: June 22, 2020
23                                    Time: 1:30 p.m.
                                      Judge: Otis D. Wright II
24                                    Courtroom: 5D
25                                    Complaint filed: April 29, 2020
26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    BACKGROUND ...................................................................................... 4

   A. The Federal Policy ............................................................................ 4

   B. The Complaint .................................................................................. 5

      1. The Policy ..................................................................................... 5

      2. Mayor Garcetti's Safer at Home Order ...................................... 5

      3. Declaratory Relief ........................................................................ 6

III.   LEGAL STANDARD ............................................................................ 6

IV.   ARGUMENT ......................................................................................... 8

   A. Plaintiffs Have Not Alleged that the Garcetti Order Prohibited Access As the Direct Result of Direct Physical Loss or Damage to Other Property Within One Mile ....................................................... 8

      1. No Direct Physical Loss or Damage Within One Mile ............... 8

      2. The Garcetti Order Did Not Prohibit Access to the Insured Premises .......... 9

      3. The Garcetti Order Was Not Issued As the Direct Result of Direct Physical Loss or Damage to Property Within One Mile ................................... 9

      4. Leave to Amend Should be Denied ........................................... 12

   B. Declarations Relating to Future Civil Authority Closures and Hypothetical Events Are Not Ripe ................................................... 12

V.    CONCLUSION .................................................................................... 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**Page(s)**

**Cases**

*18 Unnamed John Smith Prisoners v. Meese*,
   871 F.2d 881 (9th Cir. 1989) ...............................................................15

*Alcoa, Inc. v. Bonneville Power Admin.*,
   698 F.3d 774 (9th Cir. 2012) ...............................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................... 7, 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................7

*Calderon v. Ashmus*,
   523 U.S. 740 (1998) ............................................................................15

*City of Chicago v. Factory Mut. Ins. Co.*,
   No. 02 C 7023, 2004 WL 549447 (N.D. Ill. Mar. 18, 2004) ..............11

*City of Colton v. Am. Promotional Events, Inc.-West*,
   614 F.3d 998 (9th Cir. 2010) ...............................................................13

*Clinton v. Acequia, Inc.*,
   94 F.3d 568 (9th Cir. 1996) .................................................................13

*Dickie Brennan v. Lexington Insurance Co.*,
   636 F.3d 683, 686 (5th Cir. 2011) .......................................................11

*Fleck and Assocs. v. City of Phoenix*,
   471 F.3d 1100 (9th Cir. 2006) .........................................................7, 15

*Garcia v. Brownell*,
   236 F.2d 356 (9th Cir. 1956) ...............................................................13

*Gonzalez v. Planned Parenthood of Los Angeles*,
   759 F.3d 1112 (9th Cir. 2014) ...............................................................7

*Granite Outlet, Inc. v. Hartford Cas. Ins. Co.*,
   190 F. Supp. 3d 976 (E.D. Cal. 2016) .................................................12

*Ileto v. Glock, Inc.*,
   349 F.3d 1191 (9th Cir. 2003) ...............................................................6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*In re Coleman,*
    560 F.3d 1000 (9th Cir. 2009) ........................................................... 13

*In re Gilead Scis. Sec. Litig.,*
    536 F.3d 1049 (9th Cir. 2008) .............................................................. 7

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v.*
    *Chubb Corp.,*
    No. 09-6057, 2010 WL 4026375 (E.D. La. Oct. 12, 2010) ................ 11

*Laguna Pub. Co. v. Employers Reins. Corp.,*
    617 F. Supp. 271 (C.D. Cal. 1985) ..................................................... 13

*Loughney v. Allstate Ins. Co.,*
    465 F. Supp. 2d 1039 (S.D. Cal. 2006) .............................................. 12

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.,*
    187 Cal. App. 4th 766 (2010) ............................................................... 9

*Pub. Serv. Comm'n v. Wycoff, Co.,*
    344 U.S. 237 (1952) .............................................................................. 7

*S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.,*
    No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ........... 11

*Schreiber Distr. Co. v. Serv-Well Furniture Co., Inc.,*
    806 F.2d 1393 (9th Cir. 1986) ........................................................... 15

*Shroyer v. New Cingular Wireless Services, Inc.,*
    622 F.3d 1035 (9th Cir. 2010) ........................................................... 12

*Smith v. World Savings and Loan Ass'n,*
    No. 2:10-CV-02855 JAM-JFM, 2011 WL 338495 (E.D. Cal. Jan.
    31, 2011) ............................................................................................. 14

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ................................................................ 7

*Syufy Enters. v. Homes Ins. Co. of Indiana,*
    No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ............... 3, 10

*The Paradies Shops, Inc. v. Hartford Fire Ins. Co.,*
    No. 1:03-CV-3154-JEC, 2004 WL 5704715 (N.D. Ga. Dec. 15,
    2004) ................................................................................................... 11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*U.S. v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ...................................................................4

*United Air Lines, Inc. v. Ins. Co. of State of PA*,
    439 F.3d 128 (2d Cir. 2006) ........................................................3, 10, 11

**Statutes**

28 U.S.C. § 2201 ........................................................................................7

28 U.S.C. § 2201(a) ..................................................................................13

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl.1 .......................................................................7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## I.   INTRODUCTION[1]

The economic and societal disruption arising from the coronavirus pandemic confronts everyone, including not-for-profit organizations dedicated to the common good, with extraordinary challenges.  But the exigencies and engendered sympathies of the current crisis provide no basis to discard contractual language and short-circuit the judicial process.  Yet that is precisely what Plaintiffs[2] propose by seeking a declaration that their property insurance policy provides coverage for business interruption losses caused by a civil order restricting economic and other activity.

While such an order may have resulted in some disruption to Plaintiffs' activities, the plain language of the insurance policy at issue as applied to the allegations in the Complaint precludes coverage for any related financial loss.  And, beyond ignoring the policy terms, Plaintiffs improperly seek hypothetical rulings about (1) past events without any factual allegation that those events have caused losses covered by their policy and (2) future events that would require this Court to guess about the course of the pandemic and the government's response.

The policy provisions cited in the Complaint expressly provide that the availability of insurance turns on whether there has been "direct physical loss or damage" to property.  As Plaintiffs concede, however, they "do not seek any determination of whether the coronavirus is physically in the Insured Premises,

---

[1] Pursuant to 28 U.S.C. section 1407, certain plaintiffs have filed motions to transfer and coordinate or consolidate several actions that "seek a finding that [] Governmental Orders triggered coverage under the plaintiffs' business interruption insurance policies."  (MDL No. 2942.)  Federal disputes that the standards for transfer under 28 U.S.C. section 1407 are satisfied and that a multi-district litigation should be created, but wishes to advise the Court of the pending motions.

[2] Plaintiffs are the Simon Wiesenthal Center, Inc. and Moriah Films.  Defendant Federal Insurance Company (incorrectly named as Chubb Group of Insurance Companies/Federal Insurance Company) is referred to here as Federal.

amount of damages, or any other remedy other than declaratory relief."[3] (Complaint ¶ 56.)  Indeed, there is *no* allegation of physical loss or damage to Plaintiffs' own property.  Instead, Plaintiffs seek declaratory judgment that the March 19, 2020 "Safer at Home Order" issued by Los Angeles Mayor Eric Garcetti (the "Garcetti Order") triggers "Civil Authority" coverage, which is based on, among other things, damage to other nearby property.  But Plaintiffs ignore the policy's clear requirements for Civil Authority coverage.  To state a claim, Plaintiffs need to allege facts establishing *all three* of the following:

*Direct physical loss or damage within one mile.*  First, to trigger Civil Authority coverage, there must be, among other requirements, "direct physical loss or damage" to another property within one mile of the policyholder's property. Plaintiffs do not identify *any* property that actually sustained "direct physical loss or damage," much less allege that such property satisfies the proximity requirements of the policy.  In an attempt to sidestep the policy's plain language, Plaintiffs cite the Garcetti Order's general statement that coronavirus "is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time."[4]  (Complaint ¶ 30.)  But this assertion does not establish the policy's specific requirements: (a) that a property sustained direct physical loss or damage; and (b) such a property was within *one mile* of the policyholder's property.

*Prohibition of access.*  Second, Plaintiffs also do not allege facts establishing that the Garcetti Order prohibited access to the insured premises as opposed to regulating certain business operations.

*Prohibition of access as a direct result of direct physical loss or damage within one mile.*  Third, to trigger Civil Authority coverage, it is not enough that a

---

[3] Plaintiffs also have not answered Federal's repeated requests for information, such as a request to describe any physical damage to the insured premises or to any surrounding areas.

[4] Federal disputes that coronavirus can cause physical loss or property damage.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1  civil authority issued *an* order prohibiting access (which was not done here).  The

2  order must also be the ***direct result*** of ***direct*** physical loss or damage to another

3  property within one mile of the policyholder's property.  Plaintiffs allege no facts to

4  satisfy this additional policy requirement.  Indeed, the Garcetti Order was not

5  issued directly because of any property damage but to "limit the spread of COVID-

6  19."  (Request for Judicial Notice in Support of Motion to Dismiss ("RJN"), Ex. B

7  at 6, Ex. C at 13.)  Courts have routinely found no coverage for claims involving

8  civil authority orders—from post-9/11 airport closures to hurricane evacuations to

9  civil unrest curfews—where policyholders failed to establish a causal link between

10  the civil order and damage to adjacent property.  *See, e.g.*, *United Air Lines, Inc. v.*

11  *Ins. Co. of State of PA*, 439 F.3d 128, 134-35 (2d Cir. 2006).

12          As courts have explained, "Civil Authority" coverage was intended to apply,

13  for example, when a fire has caused physical damage to someone else's property

14  nearby and the authorities have, as a direct result of that damage, prohibited access

15  to the insured's property to allow for the safe repair of the nearby damage.  *See*

16  *Syufy Enters. v. Homes Ins. Co. of Indiana*, No. 94-0756 FMS, 1995 WL 129229, at

17  *2 n.1 (N.D. Cal. Mar. 21, 1995).  Plaintiffs' allegations, even if accepted as true,

18  come nowhere close to satisfying the policy's requirements for stating a claim for

19  Civil Authority coverage.  Under Federal Rule of Civil Procedure 12(b)(6), the

20  disconnect between Plaintiffs' allegations and the plain language of the property

21  insurance policy under which they seek coverage requires dismissal of the

22  Complaint in its entirety.

23          ***Declarations relating to future civil authority closures and hypothetical***

24  ***events are not ripe.***  Plaintiffs also purport to seek declarations over "future civil

25  authority closures" (Complaint ¶ 55, *Prayer for Relief*), but declarations based on

26  contingent future events are not ripe for adjudication.  Moreover, even though they

27  "do not seek any determination of whether the coronavirus is physically in the

28  Insured Premises," (*id.* ¶ 56), Plaintiffs nonetheless seek a declaration of coverage

"in the event that coronavirus has caused a loss or damage at the Insured Premises or immediate area of the Insured Premises." (*Id.* ¶ 55, *Prayer for Relief*.)  Under Rules 12(b)(1) and 12(b)(6), declaratory relief cannot be based on such hypothetical scenarios.

## II.  BACKGROUND

### A.  The Federal Policy

Federal Insurance Company issued policy 3519-19-79 ILL (the "Federal Policy" or the "Policy") to Plaintiffs for the period from August 1, 2019 to August 1, 2020.  The Federal Policy provides several types of business property coverage, including (as relevant here) Civil Authority coverage.[5]

To invoke Civil Authority coverage under the Policy, a policyholder must establish more than the existence of a civil authority order:

> We will pay for the actual:
> - **business income** loss; or
> - **extra expense**,
>
> you incur due to the actual impairment of your **operations**, directly caused by the prohibition of access to:
> - your premises; or
> - a **dependent business premises**,
>
> by a civil authority.

> This prohibition of access by a civil authority must be the direct result of direct physical loss or damage to property away from such premises or such **dependent business premises** by a **covered peril**, provided such property is within:
> - one mile; or
> - the applicable miles shown in the Declarations,
>
> from such premises or **dependent business premises**, whichever is greater.

(Declaration of Scott Shearer in Support of Motion to Dismiss ("Shearer Decl."),

---

[5] The Court can consider the Federal Policy in ruling on this motion because the Policy was referenced in the Complaint, it is central to Plaintiffs' claim, and its authenticity cannot be questioned.  *See U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

- 4 -

Ex. A at 80-81.)[6]

Among other requirements, the prohibition of access by a civil authority "must be the ***direct*** result of ***direct*** physical loss or damage" to property within ***one mile*** of the insured's premises or dependent business premises.  (*Id.* at 81.)

### B.   The Complaint

#### 1.   The Policy

The Complaint[7] alleges that policy 3519-19-79 ILL (i.e., the Federal Policy) was issued to Simon Wiesenthal Center, Inc. and Moriah Films, and forms "the basis of this suit."  (Complaint ¶¶ 2, 4, 9.)  The Complaint notes that the Federal Policy covers several properties encompassed by the Simon Wiesenthal Center (the "Insured Premises") and states that the Policy provides Civil Authority coverage "when access to the scheduled premises is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property within one mile of Plaintiffs' scheduled premises."  (*Id.* ¶¶ 9-10, 18.)  The actual Policy language has been discussed above.

#### 2.   Mayor Garcetti's Safer at Home Order

On March 19, 2020, Los Angeles Mayor Eric Garcetti issued a "Safer at Home Order."  (*Id.* ¶ 25.)  The Garcetti Order states that "the City must adopt additional emergency measures to further limit the spread of COVID-19."  (RJN, Ex. B at 6, Ex. C at 13.)  According to the Complaint, the Garcetti Order ceased "operations in Los Angeles County"[8] that require in-person attendance and prohibited public and private gatherings.  (Complaint ¶ 25.)  The Complaint claims that as a result of the Garcetti Order, Plaintiffs have closed their business and

---

[6] The Declarations in the Federal Policy do not contain a separate mileage limitation.  (*See id.* at 18.)

[7] Plaintiffs filed their initial Complaint on April 29, 2020.  (Dkt. 1.)  On the same day, Plaintiffs filed a notice of errata attaching a corrected Complaint.  (Dkt. 6.)  References in this motion are to the corrected Complaint, but the two Complaints are substantially identical.

[8] The Mayor has authority only over the City of Los Angeles, of course, not all of Los Angeles County.

canceled certain events and movie screenings.  (*Id.* ¶¶ 25-28.)  The Complaint notes that the Garcetti Order "was given in part[] because COVID-19 is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time,"[9] (*id.* ¶ 30), but the Complaint does not allege that COVID-19 caused physical loss or damage to any of the Insured Premises, any neighboring premises, or any other specific premises.  (*See id.* ¶¶ 24, 29-30, 35.)

### 3.   **Declaratory Relief**

The Complaint asserts a single cause of action for declaratory relief.  (*Id.* ¶¶ 50-56.)  It seeks (1) "a declaration that the Order by Mayor Eric Garcetti constitutes a prohibition of access to Plaintiffs' Insured Premises"; (2) "a declaration that the prohibition of access by a Civil Authority is specifically prohibited access as defined in the Policy"; (3) "a declaration that the Order triggers coverage because the Policy does not include an exclusion for a virus or global pandemic"; and (4) "a declaration that the Policy provides coverage to Plaintiffs for any current and future civil authority closures of its Insured Premises due to physical loss or damage from the coronavirus under the Civil Authority coverage parameters and the Policy provides business income coverage in the event that coronavirus has caused a loss or damage at the Insured Premises or immediate area of the Insured Premises."  (*Id.* at *Prayer for Relief.*)  The Complaint notes, however, that "Plaintiffs do not seek any determination of whether the coronavirus is physically in the Insured Premises, amount of damages, or any other remedy other than declaratory relief."  (*Id.* ¶ 56.)

## III.  **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claims.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible

---

[9] This statement was not originally in the March 19, 2020 order but was added to the order on April 1, 2020.  (*See* RJN, Ex. B at 6, Ex. C at 13.)

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation omitted).  A complaint cannot survive a motion to dismiss under Rule 12(b)(6) if it merely "tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557) (2007)) (internal quotations omitted).  The court need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  Nor should the court credit allegations that contradict materials incorporated into the complaint.  *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citations omitted).

Additionally, pursuant to Article III, courts may adjudicate only actual cases or controversies.  U.S. Const. art. III, § 2, cl.1.  When presented with a claim for a declaratory judgment, federal courts must ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion.  *See Pub. Serv. Comm'n v. Wycoff, Co*., 344 U.S. 237, 244 (1952) ("The disagreement [underlying the declaratory relief action] must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.").  Absent a true case or controversy, a complaint solely for declaratory relief under 28 U.S.C. section 2201 will fail for lack of jurisdiction under Rule 12(b)(1).  *See Fleck and Assocs. v. City of Phoenix*, 471 F.3d 1100, 1103-04 (9th Cir. 2006) (noting, in a declaratory relief action, that a true "case or controversy" is required to withstand a Rule 12(b)(1) motion for lack of jurisdiction).

## IV.   ARGUMENT

### A.   Plaintiffs Have Not Alleged that the Garcetti Order Prohibited Access As the Direct Result of Direct Physical Loss or Damage to Other Property Within One Mile

The Complaint should be dismissed under Rule 12(b)(6) because it fails to allege facts that would trigger Civil Authority coverage.  The Policy, in relevant part, states:

> We will pay for the actual:
>
> - **business income** loss; or
>
> - **extra expense**,
>
> you incur due to the actual impairment of your **operations**, directly caused by the prohibition of access to:
>
> - your premises; or
>
> - a **dependent business premises**,
>
> by a civil authority.

> This prohibition of access by a civil authority must be the direct result of direct physical loss or damage to property away from such premises or such **dependent business premises** by a **covered peril**, provided such property is within:
>
> - one mile; or
>
> - the applicable miles shown in the Declarations,
>
> from such premises or **dependent business premises**, whichever is greater.

(Shearer Decl., Ex. A at 80-81.)

Therefore, to state a claim for Civil Authority coverage, Plaintiffs must allege, among other things, facts establishing ***all*** of the following three requirements: (i) direct physical loss or damage to other property within one mile of the Insured Premises; (ii) a civil authority order prohibiting access; and (iii) that the order prohibiting access was "the direct result of direct physical loss or damage" to property within one mile of the Insured Premises or dependent business premises. Plaintiffs have failed to do so.

### 1.   No Direct Physical Loss or Damage Within One Mile

Plaintiffs generally allege that "[t]he coronavirus creates a physical impact and loss on property" (Complaint ¶ 24) and also allege that the Garcetti Order "was

- 8 -

given in part, because COVID-19 is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time." (*Id.* ¶ 30). But nowhere do Plaintiffs allege actual direct physical loss or damage to *any* property, much less property *within one mile of the Insured Premises*. This pleading defect alone is sufficient to warrant dismissal.

### 2. The Garcetti Order Did Not Prohibit Access to the Insured Premises

Plaintiffs also allege that the Garcetti Order "ceas[ed] operations in Los Angeles County that require in-person attendance by workers at a workplace and prohibit[ed] all public and private gatherings of any number of people occurring outside a residence except as allowed in the Order," and "effectively shuttered all income producing arms of the Simon Wiesenthal Center in Los Angeles." (Complaint ¶ 25.) Importantly, however, this clearly does not establish—nor do Plaintiffs allege facts establishing—that the Garcetti Order actually prohibited "access" to the Insured Premises as opposed to merely regulating the operations of certain businesses.

### 3. The Garcetti Order Was Not Issued As the Direct Result of Direct Physical Loss or Damage to Property Within One Mile

Dismissal is also warranted because Plaintiffs do not allege, as required under the Policy, that the Garcetti Order was issued as "the direct result" of any direct physical loss or damage to property within one mile of the Insured Premises. The term "direct" means "without intervening persons, conditions, or agencies; immediate." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) (citations omitted). Plaintiffs cannot possibly support such an allegation because they concede that the Garcetti Order is a non-specific, citywide order—and thus divorced from, and not issued directly as the result of, any specific physical loss or damage within one mile of the Insured Premises. Instead, the Garcetti Order was issued to "limit the spread of COVID-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1  19." (RJN, Ex. B at 6, Ex. C at 13.)

2  Even in civil authority cases where insureds have alleged specific property

3  damage nearby, their claims have still been rejected for failure to establish the

4  causal link between the physical loss and the civil authority order.  In *Syufy*

5  *Enterprises v. Home Insurance Company of Indiana*, for example, the court held, as

6  a matter of law, that Civil Authority coverage was not triggered where local

7  governments imposed dawn-to-dusk curfews in response to citywide "rioting and

8  looting."  No. 94-0756 FMS, 1995 WL 129229, at \*1-2 (N.D. Cal. March 21,

9  1995).  Similar to the language here, the policy in *Syufy* required that "'as a *direct*

10  *result* of damage to or destruction of property adjacent' to a Syufy theater, access to

11  the theater is specifically denied."  *Id*. (emphasis in original).  The court held that

12  "[t]he requisite causal link between damage to adjacent property and denial of

13  access to a Syufy theater is absent.  Syufy opted to close its theaters as a direct

14  result of the city-wide curfews, not as a result of adjacent property damage.  In fact,

15  the curfews were imposed to *prevent* 'potential' looting, rioting, and resulting

16  property damage."  *Id*. (emphasis in original).  The court noted the circumstances to

17  which Civil Authority coverage generally applies: "A building next door to a Syufy

18  theater is damaged by fire; for safety reasons, the civil authorities issue an order

19  closing the Syufy theater during repairs to the adjacent building."  *Id.* at \*2 n.3.

20  Similarly, in *United Air Lines, Inc. v. Insurance Company of State of PA*, the

21  Second Circuit held, as a matter of law, that Civil Authority coverage was not

22  available for an airport closure ordered after the September 11 terrorist attacks,

23  even though the plaintiff pointed to specific damage to the Pentagon just a few

24  miles from the insured premises at Reagan National Airport.  439 F.3d 128, 134 (2d

25  Cir. 2006).  The court held that the plaintiff had failed to "show that the Airport was

26  shut down 'as a direct result of damage to' the Pentagon."  *Id*.  The court noted that

27  "the government's subsequent decision to halt operations at the Airport indefinitely

28  was based on fears of future attacks," and that "[t]he Airport was reopened when it

was able to comply with more rigorous safety standards; the timetable had nothing to do with repairing, mitigating, or responding to the damage caused by the attack on the Pentagon." *Id*. at 134-35.  The Second Circuit concluded by observing that if the hijacked plane had missed the Pentagon and instead caused damage to a different property outside the radius for Civil Authority coverage, "it can hardly be doubted that the effect on subsequent flight operations . . . would have been virtually identical." *Id.* at 135.  Thus, the closure order was not "the direct result" of specific damage to adjacent property, but rather a preventative measure based on "fears of future attacks."  *Id.* at 134.[10]

In *Dickie Brennan v. Lexington Insurance Co.*, the Fifth Circuit similarly held, as a matter of law, that Civil Authority coverage was not available when the mayor of New Orleans issued a mandatory evacuation order in response to an approaching hurricane.  636 F.3d 683, 686 (5th Cir. 2011).  Even though the hurricane had already damaged specific property in Caribbean nations, the order was not issued because of that specific property damage, and thus the "causal link" between the damage and the civil authority action was missing.[11]  *Id.* at 686-87.[12]

---

[10] *See also The Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *17 (N.D. Ga. Dec. 15, 2004) (civil authority coverage not available for closure following September 11 attacks because "an order . . . that is designed to prevent, protect against, or avoid future damage is not a 'direct result' of already existing property loss or damage"); *cf. City of Chicago v. Factory Mut. Ins. Co.*, No. 02 C 7023, 2004 WL 549447, at *4 (N.D. Ill. Mar. 18, 2004) ("protection and preservation of property" coverage not available for closure following September 11 attacks because the closure "was ultimately imposed to protect against any further terrorist attacks").

[11] The civil authority provision in *Dickie Brennan* applied to an "action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises," and did not include a mileage limitation.  *Id.* at 685.

[12] *See also Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, No. 09-6057, 2010 WL 4026375, at *4 (E.D. La. Oct. 12, 2010) (civil authority coverage not available for closures due to hurricane because "[t]he Policy is resoundingly clear that coverage under the Civil Authority section requires not only an order prohibiting access but also physical loss within one mile of the office *and* a nexus between the prohibition order and the physical loss," and no such nexus was present) (emphasis in original); *S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (civil authority coverage not available for closures due to hurricane because evacuation order was issued due to

1   As these cases make clear, Civil Authority coverage is not triggered by

2   preventative orders such as the citywide Garcetti Order, which was not issued

3   because of specific property damage within the specified radius of the insured

4   premises, but was instead issued to "limit the spread of COVID-19."  (RJN, Ex. B

5   at 6, Ex. C at 13.)

6                    4.   **Leave to Amend Should be Denied**

7            Since Plaintiffs cannot amend the Complaint to allege ***all*** of the above

8    requirements to state a claim for Civil Authority coverage, the Complaint should be

9    dismissed with prejudice and leave to amend should be denied.  *See Loughney v.*

10   *Allstate Ins. Co.*, 465 F. Supp. 2d 1039, 1042 (S.D. Cal. 2006) (granting motion to

11   dismiss without leave to amend because allegations did not establish that plaintiff

12   was entitled to coverage under insurance policy); *Granite Outlet, Inc. v. Hartford*

13   *Cas. Ins. Co.*, 190 F. Supp. 3d 976, 986 (E.D. Cal. 2016) (granting motion to

14   dismiss declaratory relief claim without leave to amend because allegations did not

15   demonstrate that plaintiff's claims were covered under the insurance policy);

16   *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir.

17   2010) ("[T]o survive a motion to dismiss, a complaint must contain sufficient

18   factual matter to state a facially plausible claim for relief.") (citing *Ashcroft v.*

19   *Iqbal*, 566 U.S. 662 (2009)).

20         **B.    Declarations Relating to Future Civil Authority Closures and**
           **Hypothetical Events Are Not Ripe**

21

22           Plaintiffs' request relating to future conduct—a declaration that the Federal

23   Policy "provides coverage to Plaintiffs for any . . . future civil authority closures of

24   its Insured Premises due to physical loss or damage from the coronavirus under the

25   Civil Authority coverage parameters"[13] (Complaint ¶ 55, *Prayer for Relief*)—is not

26   "anticipated threat of damage" rather than specific property damage that had occurred in Florida
     and the Gulf of Mexico).

27   [13] Plaintiffs also seek a declaration based on "current" civil authority closures, but the only order
28   alleged in the Complaint is the Garcetti Order.  For reasons discussed previously, Plaintiffs fail to
     state a claim under Rule 12(b)(6) based on the Garcetti Order.

ripe.  Neither is their request for a declaration of coverage "in the event that
coronavirus has caused a loss or damage at the Insured Premises or immediate area
of the Insured Premises."  (*Id.* ¶ 55, *Prayer for Relief*.)  Both requests fail under
Rules 12(b)(1) and 12(b)(6).

Because the Declaratory Judgment Act permits declaratory relief only "[i]n a
case of actual controversy," 28 U.S.C. § 2201(a), a party seeking declaratory relief
must establish that the case is ripe for judicial determination.  *See City of Colton v.
Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1004-05 (9th Cir. 2010).  To
demonstrate ripeness, the plaintiff must show that there is a controversy of
"sufficient immediacy and reality to warrant the issuance of a declaratory
judgment."  *Id.* (quoting *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009)).
Where a dispute hangs on "contingent future events that may not occur as
anticipated, or indeed may not occur at all," there is no justiciable controversy.
*Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996) (quotations and citations
omitted).

Plaintiffs have not pleaded any facts supporting their request for a broad
declaration that the Federal Policy provides coverage for "future civil authority
closures."  The Complaint contains no allegations suggesting that any future civil
authority orders will be issued at all, let alone facts about the timing, scope, or
terms of any such orders.  Because their request relates to "contingent future events
that may not occur as anticipated, or indeed may not occur at all," it is not ripe for
consideration.  *Clinton*, 94 F.3d at 572; *see also Garcia v. Brownell*, 236 F.2d 356,
358 (9th Cir. 1956) ("Mere possibility, even probability, that a person may in the
future be adversely affected by official acts not yet threatened does not create an
'actual controversy' which is a prerequisite created by the clear language of the
[Declaratory Judgment Act].");  *Laguna Pub. Co. v. Employers Reins. Corp.*, 617 F.
Supp. 271, 273 (C.D. Cal. 1985) (declaratory relief action relating to excess
insurer's liability was not ripe because it was uncertain whether an excess claim

1    would ever actually arise).

2         Indeed, it would be impossible for the Court to determine whether the Policy

3    provides coverage for "future civil authority closures" without knowing the exact

4    details of the unformulated orders that have yet to lead to the closures.  The Federal

5    Policy provides civil authority coverage only for "actual impairment" of the

6    insured's operations "directly caused by the prohibition of access" to covered

7    premises.  (Shearer Decl., Ex. A at 80-81.)  And, as previously discussed, there

8    must be a prohibition of access (not just an order regulating operations) that must

9    also be the direct result of direct physical loss or damage to property away from

10   such premises by a covered peril, and the property must be within one mile of the

11   covered premises.  (*Id.* at 81.)  In addition, the insured is entitled to coverage only

12   for loss sustained during the policy period:

13

| **Policy Period:** | From:   AUGUST 1, 2019                    To:  AUGUST 1, 2020 |
| --- | --- |
| | 12:01 A.M. standard time at the Named Insured's mailing address shown above. |

14

15   (*Id.* at 18.)  Without knowing the precise terms and timing of any future civil

16   authority orders, the Court would be left to make coverage determinations by

17   crystal ball.  *See Smith v. World Savings and Loan Ass'n*, No. 2:10-CV-02855

18   JAM-JFM, 2011 WL 338495, at *4 (E.D. Cal. Jan. 31, 2011) ("Declaratory relief

19   must be based on an actual controversy with known parameters.  If the parameters

20   are as yet unknown, the controversy is not yet ripe for declaratory relief.")

21   (quotations and citations omitted); *Alcoa, Inc. v. Bonneville Power Admin.*, 698

22   F.3d 774, 793 (9th Cir. 2012) (explaining that claims resting on contingent future

23   events are not ripe because the facts are not "concrete and particularized" enough to

24   adjudicate the claim).

25         Likewise, Plaintiffs' request relating to hypothetical damage of the Insured

26   Premises is not ripe.  Plaintiffs state that they "do not seek any determination of

27   whether the coronavirus is physically in the Insured Premises," (Complaint ¶ 56),

28   but nonetheless seek a declaration of coverage "in the event that coronavirus has

caused a loss or damage at the Insured Premises or immediate area of the Insured Premises."  (*Id.* ¶ 55, *Prayer for Relief*.)  As with "future civil authority closures," it would be impossible for the Court to determine whether the Federal Policy provides coverage "in the event" coronavirus has caused loss or damage without knowing the precise details of the loss or damage—details that Plaintiffs specifically note they do not seek to adjudicate.  Case law is clear that declaratory relief cannot be based on such hypothetical scenarios.  *See Calderon v. Ashmus*, 523 U.S. 740, 749 (1998) (declaratory relief must "completely resolve[] a concrete controversy"); *18 Unnamed John Smith Prisoners v. Meese*, 871 F.2d 881, 883 (9th Cir. 1989) ("theoretical or abstract disagreements that do not yet have a concrete impact on the parties" are not ripe).

Plaintiffs' requests for declarations based on future orders and hypothetical events should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).  *See Fleck and Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1103-04 (9th Cir. 2006) (noting, in a declaratory relief action, that a true "case or controversy" is required to withstand a Rule 12(b)(1) motion for lack of jurisdiction).

## V.   **CONCLUSION**

For all the foregoing reasons, Federal's motion to dismiss should be granted under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  Because it will be impossible for Plaintiffs to cure their deficiencies by alleging "other facts consistent with the challenged pleading," *Schreiber Distr. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986), Federal's motion to dismiss should be granted without leave to amend.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  May 22, 2020

**O'MELVENY & MYERS LLP**
DANIEL M. PETROCELLI
RICHARD B. GOETZ
ZOHEB P. NOORANI


By: /s/ Daniel M. Petrocelli
        Daniel M. Petrocelli


Attorneys for Defendant
FEDERAL INSURANCE COMPANY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS